UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                           CRIMINAL ACTION

VERSUS                                                      No. 10-329

MONTERIO WIGGINS                                        SECTION I

## ORDER AND REASONS

Before the Court is a motion[1] filed by defendant, Monterio Wiggins ("Wiggins"), to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The government filed an opposition.[2] For the following reasons, the Court finds that an evidentiary hearing is not required, the motion is **DENIED**, and defendant's post-conviction application is **DISMISSED WITH PREJUDICE**.

## BACKGROUND

### I.      Third Superseding Indictment

On January 27, 2012, Wiggins was charged in counts 1, 2, 5, 12, 13, 14, and 19 of a 22-count third superseding indictment alleging numerous violations of the Racketeering Influenced Corrupt Organization ("RICO") Act, the Violent Crime in Aid of Racketeering Act, the Federal Gun Control Act, the Controlled Substances Act, and other federal criminal laws.[3] As discussed below, Wiggins eventually pleaded guilty to counts 1, 2, and 5.

Count 1 charged a RICO conspiracy to participate in a criminal enterprise known as the "Harvey Hustlers," and its enforcement faction, the "Murder Squad."[4] Count 2 charged that

---

[1] R. Doc. No. 623.
[2] R. Doc. No. 636.
[3] R. Doc. No. 69. Eleven other individuals were also charged in the third superseding indictment.
[4] R. Doc. No. 69, ¶¶ 1-7.

Wiggins conspired with his co-defendants and others to distribute and possess with intent to distribute 280 grams or more of cocaine base ("crack").[5] Count 5 charged that Wiggins conspired with his co-defendants and others, during and in relation to a crime of violence and drug trafficking crimes, to use and carry firearms, and possess firearms in furtherance of a crime of violence and drug trafficking crimes as alleged in the third superseding indictment.[6]

## II.    Competency Hearing

On January 17, 2013, Wiggins' counsel filed a motion to determine Wiggins' mental competency.[7] According to Wiggins' attorney, Majeeda Snead ("Snead"), "[i]n discussions with Mr. Wiggins, there are times when he is not very communicative and even when he is communicative, undersigned counsel is unsure if he fully understands the substance of the conversation."[8] Trial was scheduled to commence on January 28, 2013.[9] Accordingly, the Court granted the motion, and Wiggins was examined by Dr. Rene Culver on January 23, 2013, pursuant to 18 U.S.C. § 4241, with a report provided to the Court and counsel on the following day and a competency hearing held on January 25, 2013.[10]

At the competency hearing, Dr. Culver's report was filed into the record under seal without objection.[11] Dr. Culver testified at the competency hearing that he "examined the defendant for an hour and 15 minutes," "reviewed various legal documents [including] the criminal history, certified convictions, something called factual basis, and the third superseding

---

[5] R. Doc. No. 69, at 21-22.
[6] R. Doc. No. 69, at 23.
[7] R. Doc. No. 358.
[8] R. Doc. No. 358-1, at 2.
[9] *See* R. Doc. No. 253. Following the competency hearing, the Court granted the government's motion to continue Wiggins' trial to February 4, 2013. *See* R. Doc. No. 391.
[10] *See* R. Doc. No. 360.
[11] *See* R. Doc. No. 390. The parties stipulated, and the Court found, that Dr. Culver is "an expert in the field of forensic psychiatry." R. Doc. No. 631, at 5.

indictment," and "examined the records made available to me by his counsel, Mrs. Snead, [which] were very extensive records. About half of them were psychiatric records and about half of them were educational records."[12] With respect to the documents, Dr. Culver testified that he received a file of records that was "between a foot and 16 inches" thick,[13] and that although he "couldn't read every single word" of the educational records because of the short amount of time he had to conduct his review, he "read all the psychiatric records" and didn't "think [he] missed anything of substance."[14] Dr. Culver stated that the educational records "all said pretty much the same thing and I would sometimes skip over it and read, say, what he was doing in the next grade and the next grade and so forth just to get a sample of what was going on."[15]

Dr. Culver testified that Wiggins had "borderline" intellectual functioning, but that he was not mentally retarded.[16] Dr. Culver also testified that Wiggins "claimed not to know things that I cannot believe he would not know,"[17] but "by the time this was over it was obvious he simply was not being straightforward with me because these are things that he would have no reason not to know[,] like his own middle name or his nickname."[18] Dr. Culver also noted that

---

[12] R. Doc. No. 631, at 7.

[13] R. Doc. No. 631, at 19.

[14] R. Doc. No. 631, at 20; *see also* R. Doc. No. 631, at 20 ("Q. Did you attempt to cover everything that you believed would be material to you making the diagnosis here? A. Right, I did. I don't think I left out anything.").

[15] R. Doc. No. 631, at 20. The Court notes that Dr. Culver detailed several particular medical and educational records in his sealed report. *See* R. Doc. No. 390, at 7-12.

[16] R. Doc. No. 631, at 9; *see also* R. Doc. No. 631, at 18 ("He's not out of touch with reality in the sense of being psychotic. And he is certainly not so limited intellectually that he couldn't understand [the way the law works] if it were explained to him. Now if he had an IQ of 40 or 50, that would be an entirely different matter. But an IQ of 71 is adequate for understanding that sort of thing.").

[17] R. Doc. No. 631, at 11.

[18] R. Doc. No. 631, at 12. Dr. Culver also noted that Wiggins sustained a closed head injury at the age of four, but that he "didn't see any problem with the memory other than [Wiggins'] professed difficulty or inability to remember things," and Dr. Culver stated, "I saw no evidence of cognitive impairment when I examined him." R. Doc. No. 631, at 16. Dr. Culver also testified,

Wiggins "gave very contradictory answers on other occasions."[19] For example, Wiggins first claimed "that he had never had inpatient psychiatric treatment," but later he "gave a completely different answer" and admitted that he had been hospitalized at River Oaks.[20] Dr. Culver emphasized that he found "[n]o evidence of a thought disorder, no evidence of psychosis. And that oppositional behavior, I've said, I've quoted him many times saying, 'I don't know, I don't remember.' And this is -- it's a behavioral problem that has been present throughout his lifetime."[21]

Dr. Culver advised the Court that Wiggins was in control of his behavior,[22] and Dr. Culver testified on cross-examination that there was no mental illness that contributed to Wiggins' behavior; Wiggins was being willfully dishonest and uncommunicative.[23] Dr. Culver

---

"And when I asked him if he had any problems as a result of the head injury, . . . he said he didn't have any problems as a result of it." R. Doc. No. 631, at 17.

[19] R. Doc. No. 631, at 11.

[20] R. Doc. No. 390, at 5-6; *see also* R. Doc. No. 631, at 11-12; *cf.* R. Doc. No. 623, at 16 ("[A]lthough petitioner does not claim commitment to a mental institution . . . .").

[21] R. Doc. No. 631, at 13. Dr. Culver acknowledged that some doctors had diagnosed Wiggins with bipolar disorder, but Dr. Culver believed this to be a misdiagnosis. R. Doc. No. 631, at 33-34. Dr. Culver explained: "He's had a lot of diagnoses over the years. There must have been 10 or 12 diagnoses that have been placed on this person. Consequently a lot depends on who saw him because different doctors have different ideas about him." R. Doc. No. 631, at 34-35. Dr. Culver concluded that Wiggins was not psychotic and noted that "[e]very time [Wiggins] went to somebody, no matter whether it was a psychologist or a psychiatrist or a hospital or a mental health clinic or wherever, it was because of his behavior." R. Doc. No. 631, at 39.

[22] *See, e.g.*, R. Doc. No. 631, at 28 ("THE COURT: Dr. Culver, excuse me. To the extent that the defendant, Mr. Wiggins, has failed to cooperate with counsel in any respect, [do] you have an explanation as to why he would fail to cooperate fully? THE WITNESS: First of all, I think it's his character pathology that causes him to do it. He's done it before. He has a long history of failure to cooperate and this is documented so that is just part of his modus operandi as a person. And the second reason is, I think he thinks it's to his advantage to do so. This way he can possibly avoid going to trial. THE COURT: Would it be a fair statement to state that he controls, he himself controls whether or not he cooperates with persons like his counsel? THE WITNESS: He has that under his control. There is no mental illness that he has that would prevent him from having that control.").

[23] R. Doc. No. 631, at 24-25 ("Q. My question to that is in light of his prior mental health, the history of mental health treatment, as well as non-treatment, is it possible that there is something

4

gave an ultimate diagnosis of substance abuse,[24] antisocial personality disorder, and borderline intellectual functioning.[25] Based on his examination of Wiggins and his review of the records, Dr. Culver concluded that Wiggins was competent to proceed.[26]

The Court found that "Dr. Culver has a well reasoned opinion with respect to the competency of this defendant and [that] his testimony [was] persuasive and credible."[27] No other evidence was presented at the competency hearing. Accordingly, based on Dr. Culver's testimony, "as well as . . . the voluminous records that were examined by Dr. Culver, I find that the defendant is not presently suffering from a mental disease or defect which would render him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."[28]

---

other than willful[ness] and lack of honesty that can contribute to his behavior and his relationship with communicating? A. No, and I will explain my answer. First of all, I did not find anything on clinical examination to indicate that there would be. And, second, there is no documentation in that very large volume of psychiatric records to indicate that he ever had any kind of mental illness that would cause him to be unable to respond to things that are asked him. Specifically, there is no documentation that he has a cognitive disorder that would make him unable to understand a question and respond to it. And it's, as I pointed out, there is no documentation anywhere that he has ever been psychotic. So in the absence of psychosis, in the absence of any evidence that this man is, say, profoundly depressed and therefore so withdrawn that he just can't respond, he's not even on any medication right now. There is no mental illness that would explain the defendant's oppositional behavior other than, and it's not really in any usual sense a mental illness, it's a personality problem. That's just the way he deals with people around him.").

[24] *Cf., e.g.*, R. Doc. No. 390, at 4, 9-12 (noting cannabis abuse).

[25] R. Doc. No. 390, at 7.

[26] R. Doc. No. 631, at 6 ("I think that he is able to assist counsel in his defense. I believe that he understands the nature of the charges brought against him. I think he appreciates the gravity of his situation. And I believe that he has had enough experience with the legal system to have a general idea of what the functions of the officers and the Court are.").

[27] R. Doc. No. 631, at 44.

[28] R. Doc. No. 631, at 44.

### III.    Rearraignment

On January 28, 2013, three days after the competency hearing, Wiggins appeared before the Court to plead guilty to counts 1, 2, and 5 pursuant to a Rule 11(c)(1)(C) plea agreement.[29] The Court again found Wiggins to be competent.[30] The Court emphasized to Wiggins that he did not have to plead guilty, as the Court had been advised that Wiggins had "wavered before on whether or not you want to plead guilty."[31] Wiggins repeatedly admitted to the factual basis and stated that he was pleading guilty because he was in fact guilty.[32] He admitted that he and a co-defendant shot Francois resulting in his death.[33] Wiggins also stated that he understood the charges against him and the elements of the offenses.[34]

The Court explained to Wiggins that "you and the government have agreed that you should receive a sentence of 30 years imprisonment as to Counts 1 and 2, and 20 years imprisonment as to Count 5, each sentence to run concurrently."[35] Wiggins also stated that: (1) he understood that the Court could reject the 11(c)(1)(C) agreement and impose the maximum possible sentence;[36] (2) the mandatory minimum sentences, the maximum possible sentences, and the sentencing guidelines applicable to his case had been explained to him;[37] (3) he understood that the sentencing guidelines are advisory and not binding on the court;[38] (4) he understood that the Court may depart from the guideline range under certain circumstances;[39]

---

[29] *See* R. Doc. No. 632.
[30] R. Doc. No. 632, at 3-4.
[31] R. Doc. No. 632, at 19.
[32] R. Doc. No. 632, at 19-21, 40-41, 45-46, 56, 58.
[33] R. Doc. No. 632, at 15-16.
[34] R. Doc. No. 632, at 34.
[35] R. Doc. No. 632, at 34; *see also* R. Doc. No. 395, at 2.
[36] R. Doc. No. 632, at 37.
[37] R. Doc. No. 632, at 37-38.
[38] R. Doc. No. 632, at 38.
[39] R. Doc. No. 632, at 38.

and (5) he understood that the Court would not be able to calculate the guidelines until the presence report ("PSR") had been completed and each side had an opportunity to examine and challenge the facts reported by U.S. Probation.[40] Wiggins further stated that nobody had told him what sentence he might receive, other than if the Court accepted the 11(c)(1)(C) plea agreement.[41]

Snead stated that she was satisfied that Wiggins was pleading guilty voluntarily and understandingly and with full knowledge of the consequences of his plea.[42] Wiggins stated that he was entirely satisfied with the advice and services of Snead.[43] The Court found that Wiggins' guilty plea was knowledgeable, voluntary, and had a basis in fact containing all the elements of the crimes charged in counts 1, 2, and 5 of the third superseding indictment, and it accepted the guilty plea as to those counts.[44]

### IV.    Sentencing

On July 25, 2013, Wiggins appeared before the Court for sentencing.[45] Wiggins' sentencing guidelines were 235 to 293 months based on an offense level of 35 and a criminal history category of IV.[46] However, the Court accepted the 11(c)(1)(C) agreement of 30 years,

---

[40] R. Doc. No. 632, at 38.

[41] R. Doc. No. 632, at 41; *see also* R. Doc. No. 632, at 57 ("THE COURT: Now, look, if I accept the 11(c)(1)(C) plea you're going to be doing 30 years in prison. Do you understand that? THE DEFENDANT: Yes, sir. THE COURT: Now, I'll ask you one last time. How do you wish to plead? THE DEFENDANT: Guilty, sir.").

[42] R. Doc. No. 632, at 55.

[43] R. Doc. No. 632, at 41.

[44] R. Doc. No. 632, at 58.

[45] *See* R. Doc. No. 585.

[46] R. Doc. No. 585, at 21. Wiggins objected to the obstruction of justice enhancement contained in paragraphs 242 and 243 of the PSR. *See* R. Doc. No. 538, ¶¶ 242-43; R. Doc. No. 585, at 5. Although the government presented the testimony of Dana Francois, the niece of Reginald Francois, *see* R. Doc. No. 585, at 7-20, the Court did not find her testimony credible and sustained Wiggins' objection, resulting in the above-described guideline range. R. Doc. No. 585,

resulting in an upward variance from the sentencing guidelines,[47] and representing 30 years' imprisonment as to counts 1 and 2, and 20 years' imprisonment as to count 5, with each sentence to run concurrently.[48] The Court also ordered Wiggins to pay $8,000 in restitution to Francois's family[49] and ordered Wiggins to be placed on supervised release for a term of 10 years following his release from imprisonment.[50] Pursuant to the plea agreement, count 12, which charged Wiggins with murder in aid of racketeering, and counts 13, 14, and 19, which charged various firearms offenses, were dismissed by the Court.[51]

### STANDARD OF LAW

Section 2255(a) provides a prisoner in custody with four grounds upon which relief may be granted: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Hill v. United States*, 368 U.S. 424, 426-27 (1962). Section 2255 is designed to remedy constitutional errors and other injuries that could not be brought on direct appeal and would result in injustice if left unaddressed. *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "[A] proceeding under Section 2255 is an independent and collateral inquiry into the validity of the conviction . . . ." *United States v. Hayman*, 342 U.S. 205, 222-23 (1952). The inquiry does not extend to the misapplication of sentencing guidelines. *See Williamson*, 183 F.3d at 462.

---

at 19-21. Wiggins also objected to ¶ 215 of the PSR, but the Court dismissed that objection as moot because it did not affect the guidelines determination. *See* R. Doc. No. 585, at 4.

[47] R. Doc. No. 585, at 23.

[48] R. Doc. No. 585, at 24; *see also, e.g.*, R. Doc. No. 395, at 2.

[49] R. Doc. No. 585, at 24.

[50] The supervised release term consists of 3 years as to counts 1 and 5 and 10 years as to count 2, all to be served concurrently. R. Doc. No. 585, at 25.

[51] R. Doc. No. 585, at 29.

"The § 2255 remedy is broad and flexible, and entrusts to the courts the power to fashion an appropriate remedy." *United States v. Garcia*, 956 F.2d 41, 45 (4th Cir. 1992) (citing *Andrews v. United States*, 373 U.S. 334, 339 (1963)). Pursuant to § 2255, the Court must grant defendant a hearing to determine the issues and make findings of fact and conclusions of law unless "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992).

"The Supreme Court has emphasized repeatedly that a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (quotation omitted). "[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice" or actual innocence. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 622 (1998). The Supreme Court has held that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought" in a § 2255 proceeding. *Massaro*, 538 U.S. at 509; *see also, e.g.*, *United States v. Johnson*, 124 F. App'x 914, 915 (5th Cir. 2005).

## DISCUSSION

Wiggins asserts two grounds for relief: (1) that he "did not make a knowing and intelligent decision to plead guilty . . . due to [his] limited mental capacity,"[52] and (2) that Snead provided ineffective assistance of counsel by failing to fully investigate his mental history and failing to properly explain the consequences of his guilty plea.[53] The government opposes the

---

[52] R. Doc. No. 623, at 4. Although Wiggins' memorandum in support of his § 2255 motion makes clear that his primary contention is that he was provided ineffective assistance of counsel, *see* R. Doc. No. 623, at 16-18, the Court addresses the issue of competency because Wiggins does mention it on his standardized § 2255 form and, obliquely, in his memorandum.

[53] R. Doc. No. 623, at 5. Wiggins also cites a number of cases with little relevance to his claims. R. Doc. No. 623, at 14-18; *see, e.g.*, *Hall v. Florida*, 134 S. Ct. 1986 (2014); *Dusky v. United*

motion on the basis that Snead raised the issue of Wiggins' competency by motion, that Wiggins was examined and found to be competent by the Court, that Wiggins did not receive ineffective assistance of counsel, and that his plea was knowing and voluntary.[54] The government also asserts that an evidentiary hearing is unnecessary.[55]

The government does not argue that the waiver of post-conviction rights in Wiggins' plea agreement should preclude his § 2255 motion. The motion is not untimely because it was filed within one year after the judgment against him became final.[56] *See* 28 U.S.C. § 2255(f).

## I.     Competency

"Constitutional due process mandates that an accused person may only be convicted while legally competent." *United States v. Minor*, No. 09-391, 2014 WL 4230934, at *3 (E.D. La. Aug. 26, 2014) (Duval, J.) (citing *Pate v. Robinson*, 383 U.S. 375, 378 (1966); *Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir. 1980)). "'This constitutional right cannot be waived by the incompetent—by guilty plea or otherwise . . . .'" *Bouchillon v. Collins*, 907 F.2d 589, 592 (5th Cir. 1990) (quoting *Carroll v. Beto*, 421 F.2d 1065, 1067 (5th Cir. 1970)). "[T]he degree of mental competency required to plead guilty is the same as that required to stand trial." *United States v. Neal*, 509 F. App'x 302, 308 (5th Cir. 2013) (citing *Malinauskas v. United States*, 505 F.2d 649, 650 (5th Cir. 1974)).

The statutory standard for competency directs the Court to find by a preponderance of the evidence whether "the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and

---

*States*, 362 U.S. 402 (1960); *Dunn v. Johnson*, 162 F.3d 302 (5th Cir. 1998); *Mauldin v. Wainwright*, 723 F.2d 799 (11th Cir. 1984).

[54] R. Doc. No. 636, at 3-9.

[55] R. Doc. No. 636, at 9-10.

[56] *See* R. Doc. No. 557.

consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C.

§ 4241(d); *see also United States v. Fields*, 761 F.3d 443, 467 (5th Cir. 2014) ("'It has long been

accepted that a person whose mental condition is such that he lacks the capacity to understand

the nature and object of the proceedings against him, to consult with counsel, and to assist in

preparing his defense may not be subjected to a trial.'") (quoting *Drope v. Missouri*, 420 U.S.

162, 171 (1975)). "Not all people who have a mental problem are rendered by it legally

incompetent." *Bouchillon*, 907 F.2d at 593.

Wiggins claims that his plea was not knowing and voluntary "due to my limited mental

capacity."[57] Wiggins contends that that this Court "perform[ed] a perfunctory competency

hearing and ignore[d] the seriousness of the medications for which petitioner had been

prescribed,"[58] including "Zoloft, Risperdal, Trileptal, and Prozac."[59] Wiggins also attached an

---

[57] R. Doc. No. 623, at 4. The Court notes that some courts have found that a defendant cannot raise the issue of competency in a § 2255 motion when the defendant's competency was established at a hearing prior to conviction. *See United States v. Cherer*, No. 05-325, 2012 WL 458422, at *1-2 (D. Nev. Feb. 13, 2012) ("Though a § 2255 motion may raise the issue of mental competency as a ground to vacate the sentence, such collateral attack is not ordinarily permitted where a competency hearing has been held prior to trial. . . . Moreover, because petitioner was found competent after a competency hearing, a § 2255 petition is not permitted absent 'unusual circumstances.'"); *see also United States ex rel. Curtis v. Zelker*, 466 F.2d 1092, 1100 (2d Cir. 1972); *Hanson v. United States*, 406 F.2d 199, 201-02 (9th Cir. 1969) ("It is well established that the question of mental competency of a convicted defendant at the time of his trial or entry of plea may be raised by motion to vacate the sentence under Sec. 2255. . . . However, in those jurisdictions where the matter has been decided, no such collateral attack on the sentence is usually permitted where the issue of competency was heard and determined in trial court under the provisions of Sec. 4244.").

[58] R. Doc. No. 623, at 17.

[59] R. Doc. No. 623, at 16. As stated, these were medications that Wiggins had taken in the past, but Wiggins denied that he was taking any medication at the time of his examination by Dr. Culver. *See* R. Doc. No. 631, at 24-25; *see also* R. Doc. No. 632, at 3 ("THE COURT: Have you taken any narcotic drugs, medicine, pills, or consumed any alcohol in the past 24 hours? THE DEFENDANT: No.").

exhibit to his motion: a "re-evaluation report" from the Louisiana Department of Education that detailed his educational progress and difficulties as of March 2007.[60]

Wiggins' description of the competency hearing as "perfunctory" is not reflected by the record. As described above, Dr. Culver examined Wiggins and reviewed an extensive amount of documentation. Dr. Culver's report and testimony were thorough and he was subjected to extensive examination by the government, cross-examination by Snead, and questioning by the Court. Each of the medications that Wiggins mentions in his § 2255 motion were specifically noted by Dr. Culver, either in his report, in his testimony, or both.[61] Wiggins has not provided any medical evidence that would contradict Dr. Culver's findings.

The record does not reflect whether Dr. Culver ever examined the particular document that Wiggins attached as an exhibit to his § 2255 motion or whether it was included in the file compiled by Snead. Although Dr. Culver stated that he did not examine every page of Wiggins' educational records, he did examine all of Wiggins' psychiatric records and enough of the educational records to satisfy himself that he had not missed anything of substance.[62] More importantly, the exhibit submitted by Wiggins echoes in part Dr. Culver's report and testimony, and its contents are consistent with and duplicative of the information presented to the Court at the competency hearing. For example, the re-evaluation report concludes that Wiggins' "Diagnosed Impairment or Condition" was an "inability to exhibit appropriate behavior under

---

[60] R. Doc. No. 623, at 20-30. Wiggins also asserts that he is "unable to read," R. Doc. No. 623, at 4, but this is contradicted by statements he made at the rearraignment hearing. *See* R. Doc. No. 632, at 3 ("THE COURT: Do you read? THE DEFENDANT: Yes."); *see also* R. Doc. No. 632, at 4 ("THE COURT: Have you read the third superseding indictment? THE DEFENDANT: Yes. THE COURT: Do you want me to read it to you? THE DEFENDANT: No, sir."); R. Doc. No. 632, at 19 ("THE COURT: . . . Did you read the factual basis before you signed it, sir? THE DEFENDANT: Yes.").

[61] *See, e.g.*, R. Doc. No. 390, at 9-11; R. Doc. No. 631, at 8, 37. Dr. Culver also noted Wiggins' extensive history of cannabis use. *See* R. Doc. No. 390, at 4, 9-12.

[62] R. Doc. No. 631, at 19-20.

normal circumstances, [an] inability to build or maintain satisfactory interpersonal relationships with peers and/or adults," and impaired performance in "all academics."[63] These conclusions were entirely consistent with Dr. Culver's testimony and the other evidence which he reviewed. Accordingly, the additional evidence provided by Wiggins does not cast any doubt on the Court's finding that he was competent to proceed.

Finally, to the extent that Wiggins argues that his plea was not knowing and voluntary because "no one took the time to fully explain to me that if I accepted the plea deal for 30 [years] that I would be doing more time than I would have faced under the guidelines,"[64] such argument is without merit. At the rearraignment hearing, the Court thoroughly explained the possible sentences that Wiggins faced and the role of the sentencing guidelines, including the fact that the guidelines could not be calculated until after the PSR was prepared.[65] Although Wiggins' guideline range was less than the 30 year imprisonment he ultimately received for counts 1, 2, and 5,[66] Wiggins also secured the dismissal of four other counts as part of his plea bargain,[67] including count 12, murder in aid of racketeering, which carried a mandatory minimum sentence of life in prison. *See* 18 U.S.C. § 1959(a)(1) ("Whoever, [in connection with] racketeering activity, murders . . . any individual in violation of the laws of any State of the United States, or attempts or conspires so to do, shall be punished . . . for murder, by death or life imprisonment, or a fine under this title, or both . . . .").

Wiggins cannot now retract his sworn statement that he understood the possible sentences that he faced. *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) ("'Solemn

---

[63] R. Doc. No. 623, at 28.
[64] R. Doc. No. 623, at 4.
[65] R. Doc. No. 632, at 38.
[66] *See* R. Doc. No. 585, at 21.
[67] *See* R. Doc. No. 585, at 29.

declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in any subsequent collateral proceedings.'") (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)); *see also United States v. Gonzalez-Archuleta*, 507 F. App'x 441, 442 (5th Cir. 2013) ("We bear in mind that 'solemn declarations in open court carry a strong presumption of verity,' and a defendant ordinarily may not refute testimony given under oath at a plea hearing.") (citations omitted) (quoting *United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009)). Accordingly, this asserted ground for relief is without merit.

## II.    Ineffective Assistance of Counsel

The United States Supreme Court set forth the standard for judging the performance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court articulated a two-part test that requires the petitioner to prove (1) deficient performance and (2) resulting prejudice. *Id.* at 697.

Deficient performance is established by "show[ing] that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In applying this standard, a "court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (quoting *Strickland*, 466 U.S. at 689).

The second prong of the *Strickland* test looks to the prejudice caused by counsel's allegedly deficient performance. This requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is that which renders the proceeding unfair or unreliable, i.e., undermines confidence in its outcome." *Williamson*, 183 F.3d at 463. In the context of

alleged trial errors, the petitioner must show that his "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

A petitioner who pleads guilty must show that the outcome of the plea process would have been different with competent advice and that "but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *See Lafler v. Cooper*, 132 S. Ct. 1376, 1384-85 (2012) (internal quotation marks omitted) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

"An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue." *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *see also Medellin v. Dretke*, 371 F.3d 270, 279 (5th Cir. 2004) ("Because the claim . . . is without merit, the claim of ineffective assistance of counsel for not raising the issue on appeal is, likewise, without merit."); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.").

The petitioner must satisfy both prongs of the *Strickland* test in order to be successful on an ineffective assistance claim. *See Strickland*, 466 U.S. at 697. A court is not required to address these prongs in any particular order. *Id.* If it is possible to dispose of an ineffective assistance of counsel claim without addressing both prongs, "that course should be followed." *Id.*

Wiggins contends that Snead failed to provide effective assistance of counsel in a number of ways. First, Wiggins contends that Snead should have done more to investigate his mental health and competency. Wiggins asserts that Snead failed to "fully investigat[e] my mental history, and the medications I took, in addition to my recorded history of marijuana abuse . . .

where it was clearly obvious that my mental ability would have provided a sound defensive argument for my actions,"[68] and that she failed to discover documentation from the Louisiana Department of Education (that is, the re-evaluation report).[69] Second, Wiggins contends that he received constitutionally deficient advice during the plea process—specifically, regarding his decision to plead guilty, the waiver of appellate and post-conviction rights, and the presentation of mitigation evidence. Wiggins contends that Snead failed "to properly explain to me the consequences of accepting a plea which waived all of my rights to challenge my conviction,"[70] and that she "failed to afford petitioner an opportunity to challenge the events surrounding the offenses alleged, and any possible mitigation of punishment based on the questions concerning petitioner's competency to stand trial, or accept a plea."[71] Wiggins asserts that, but for Snead's failures, there "could have [been] a 'reasonable probability' that one juror or finder of fact would have questioned the charges levied based on evidence counsel did not discover or present."[72]

---

[68] R. Doc. No. 623, at 5; *accord* R. Doc. No. 623, at 16-17 (". . . failed to undertake an independent investigation and obtain supporting evidence of mental incompetence [and] advised him to plead guilty without presenting an affirmative defense . . ."); R. Doc. No. 623, at 18 ("All of these are factors for which counsel would have had more than enough ground[s] for an affirmative defense had she been willing to represent petitioner competently and fairly instead of misusing petitioner's faith in her to ignore her oaths."). To the extent that Wiggins is arguing that Snead should have pursued an affirmative defense, Wiggins does not identify what, if any, affirmative defense should have been pursued. *See* R. Doc. No. 632, at 41 ("THE COURT: Have you had sufficient time to discuss with your attorney the facts of your case and any possible defenses you may have? THE DEFENDANT: Yes, sir."). Moreover, as noted above, Wiggins solemnly declared in open court that he was guilty of the crimes charged and that he murdered Francois. R. Doc. No. 632, at 15-16, 19-21, 40-41, 45-46, 56, 58.

[69] R. Doc. No. 623, at 16.

[70] R. Doc. No. 623, at 5.

[71] R. Doc. No. 623, at 16; *accord* R. Doc. No. 623, at 17 (". . . failed to interview witnesses and present mitigating evidence regarding where there [sic] was evidence in [the] record that petitioner had extensive history of mental and emotional problems severe enough in nature that ps[y]chotropic drugs were administered . . .").

[72] R. Doc. No. 623, at 17.

With respect to Wiggins' competency and Snead's investigation with respect to such competency, Snead was the person who brought the issue to the Court's attention by filing the motion for a competency determination. As noted by the Court at the competency hearing, Dr. Culver examined Wiggins and reviewed "voluminous records" that were provided by Snead.[73] Furthermore, as discussed above, Wiggins' mental health history, his previous medications, and his substance abuse were all noted by Dr. Culver and presented to the Court. Even if Snead was deficient in failing to discover the re-evaluation report, the report would not have affected the Court's finding with respect to Wiggins' competency, as discussed above. The Court need not consider whether Snead's performance was deficient because Wiggins cannot establish the second *Strickland* prong—that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

Furthermore, under *Strickland*, a petitioner "who alleges a failure to investigate on the part of his counsel must allege *with specificity* what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989) (citations omitted) (emphasis added); *see also United States v. Goodley*, 183 F. App'x 419, 422-23 (5th Cir. 2006) (citing *Green*, 882 F.3d at 1003). Wiggins has not identified any other evidence or named any witnesses whose testimony may have altered the outcome of the competency hearing.

With respect to Wiggins' claims regarding the plea process, Wiggins is also unable to establish *Strickland* prejudice. As noted, Wiggins repeatedly stated at the rearraignment hearing

---

[73] R. Doc. No. 631, at 44.

that he was pleading guilty because he was in fact guilty,[74] and he told the Court that his decision to plead guilty was "[m]ine and mine alone."[75] Wiggins also stated that he understood the waiver of appellate and post-conviction rights and that he was entering into such waiver voluntarily.[76] The Court explained every aspect of that waiver to him at the rearraignment hearing.[77]

Wiggins also stated that he understood the charges against him and the elements of the offenses.[78] Most importantly, Wiggins has not asserted that "but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." *See Lafler*, 132 S. Ct. at 1384-85 (internal quotation marks omitted) (quoting *Hill*, 474 U.S. at 59). At most, Wiggins contends that if he had gone to trial, there is "a 'reasonable probability that *one juror* or finder of fact would have questioned the charges."[79] Especially considering the fact that Wiggins received a far lesser sentence than he would have faced had he been convicted of all counts at trial, Wiggins falls well short of a showing that but for Snead's allegedly deficient performance, he would not have pled guilty and that he would have *insisted* on going to trial.

Finally, with respect to mitigation evidence, Wiggins has not identified anything additional that Snead should have presented to the Court beyond what was already included in the sentencing memorandum that she filed on Wiggins' behalf.[80] More importantly, the Court approved the Rule 11(c)(1)(C) agreement and dismissed four charges against Wiggins, meaning that Wiggins received the sentence for which he had bargained. Accordingly, because Wiggins has not argued that he would not have pleaded guilty but for Snead's allegedly deficient counsel,

---

[74] *See, e.g.*, R. Doc. No. 632, at 19-21, 40-41, 45-46, 56, 58.
[75] R. Doc. No. 632, at 40.
[76] R. Doc. No. 632, at 52-53.
[77] R. Doc. No. 632, at 49-53.
[78] R. Doc. No. 632, at 34.
[79] R. Doc. No. 623, at 17 (emphasis added).
[80] R. Doc. No. 464.

and because Wiggins received the sentence for which he had bargained, Wiggins' has failed to satisfy the second *Strickland* prong.

## CONCLUSION

An evidentiary hearing is required on defendant's motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). For the foregoing reasons, the motion, files, and record of the case conclusively show that defendant is not entitled to relief. *See Bartholomew*, 974 F.2d at 41. Accordingly,

**IT IS ORDERED** that the motion is **DENIED** and defendant's post-conviction application is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, March 25, 2015.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**